IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DR. WHITNEY ROSS, TRUSTEE and DR. IAN ROSS, TRUSTEE**, <br><br> Plaintiffs, <br><br> v. <br><br> **RACHEL L. SIEGERT and JENKINS & KLING, P.C.**, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Cause No. 4:23-cv-01295-MTS |

**DEFENDANTS RACHEL L. SIEGERT AND JENKINS & KLING, P.C.'S
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

COME NOW Defendants Rachel Siegert ("**Siegert**") and Jenkins & Kling, P.C. ("**Jenkins & Kling**") (collectively, "**Defendants**"), by and through counsel, and submit their Memorandum in Support of their Joint Motion to Dismiss the Complaint filed by Plaintiffs Dr. Whitney Ross and Dr. Ian Ross, as trustees of the Ross Family Trust dated October 21, 2021 (collectively, "**Plaintiffs**" or the "**Rosses**"). In support thereof, Defendants respectfully submit to this Honorable Court as follows:

**Summary of Argument**

Plaintiffs have sued Jenkins & Kling for complying with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**") and Plaintiffs have sued Siegert purely for harassment purposes as this is the second hastily filed frivolous lawsuit Plaintiffs have initiated against her. This motion challenges this Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because there is not one allegation in the Complaint that asserts Plaintiffs were injured from the required FDCPA correspondence sent by Jenkins & Kling to Amundsen Davis,

1

LLC ("**Amundsen Davis**").[1] On this basis alone, the Complaint should be dismissed. Even assuming that the standing threshold is met, on the face of their Complaint, Plaintiffs wholly fail to state a claim for violation of the FDCPA pursuant to Federal Rule of Civil Procedure 12(b)(6), which also warrants dismissal. For these and the reasons set forth herein, Defendants respectfully request this Court grant their Motion to Dismiss.

**Relevant Factual & Procedural Background**

i.  The Sale of 1218 Kraft Street from Siegert to Plaintiffs

Siegert is an individual and the former owner of 1218 Kraft Street, St. Louis, Missouri 63139, a home that was built by D&R Building Group, LLC and Jolen Investments, LLC (collectively, "D&R"). (Doc. 1, ¶ 10). On March 5, 2020, Siegert and Ian and Whitney Ross, individually, entered into a residential sale contract whereby Siegert agreed to sell, and Ian and Whitney Ross agreed to purchase the real property located at 1218 Kraft Street, St. Louis, Missouri 63139. (Doc. 1, Exhibit A). In connection with the sale, Siegert completed a seller's disclosure statement dated March 5, 2020 wherein she represented she was not aware of certain issues with the home. (*Id*.) The Rosses closed on the residence on April 9, 2020. (Doc. 1, ¶ 10).

ii.  The State Action[2]

Three years later, in their capacities as trustees of the Ross Family Trust dated October 20, 2021, the Rosses filed a petition in the Circuit Court of the City of St. Louis, which had the original case number of 2322-CC00955, but the Rosses' claims were later severed into case number 2322-CC08849 (collectively and as severed, the "**State Action**"). The Rosses jointly filed their petition

---

[1]  Suing opposing counsel for representing their client and in retaliation for losing motions in state court is the exact type of behavior prohibited by the Missouri Rules of Professional Conduct.

[2]  On a motion to dismiss, the district court is permitted to take judicial notice of public records. *See Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 670 (E.D. Mo. 2020) (citing *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). As such, the summary of the State Action is properly considered as part of Plaintiffs' pleadings without converting the instant motion to a motion for summary judgment.

in the State Action with another couple, the Reynosos, despite the fact that the two sets of plaintiffs alleged different claims against different parties for different houses. The common denominator among the four plaintiffs is that they both presently own a home built by D&R and designed by the same architect.

In the State Action, the Rosses allege that they moved into the property in June of 2020 and soon discovered certain problems with the property, including active water leaks and mold issues. The Rosses asserted causes of action for fraudulent misrepresentation against Siegert. negligence against D&R, and breach of contract against their home inspector, again, three years later.

    iii.    <u>Siegert's Third-Party Petition and the FDCPA correspondence</u>

On July 17, 2023, in the State Action, Siegert filed an answer and affirmative defenses and a third-party petition against Whitney and Ian Ross, as individuals, for a claim of declaratory judgment to declare that Siegert met all her obligations under the residential sale contract. (Doc. 1, ¶ 14). The claim is based on the provision of the residential sale contract that allows for the prevailing party to recover attorneys' fees in the event of a dispute between the parties as well as R.S.Mo. § 527.010. (Doc. 1, Exhibit A). The same day the third-party petition was filed, Jenkins & Kling caused a standard demand for payment letter to be sent to Plaintiffs' counsel, William Wurm of Amundsen Davis, pursuant to 15 U.S.C. § 1692g.

On August 21, 2023, Wurm disputed the validity of the debt via e-mail and requested that Jenkins & Kling verify the debt, which obligated Jenkins & Kling to send a second letter to Wurm under the FDCPA. (Doc. 1, ¶ 23); *see also* 15 U.S.C. § 1692g. On August 25, 2023, Jenkins & Kling responded with the second letter verifying the alleged debt pursuant to 15 U.S.C. § 1692g.

3

(Doc. 1, Exhibit C). On August 28, 2023, Wurm sent an email littered with distortions of law and insults, to which Jenkins & Kling declined to respond.

  iv.  <u>The TRO in the State Action</u>

On September 4, 2023, Plaintiffs filed a Motion for Temporary Restraining Order ("**Motion for TRO**") in the State Action requesting that <u>Siegert</u> cease from all debt collection efforts. (Doc. 1, ¶ 30). In the Motion for TRO, the Rosses—two practicing physicians—alleged they were traumatized, were experiencing severe emotional distress, and were triggered each time they received a collection letter. As the record reflects in the State Action, the state court denied the Rosses' Motion for TRO and critically, in the order denying the Rosses' Motion for TRO, Jenkins and Kling agreed it had, "no present intent to issue collection letters outside the litigation." (Doc. 1, Exhibit D).

  v.  <u>The Writ of Prohibition in the Missouri Court of Appeals</u>

On August 11, 2023, in the State Action, Siegert filed a motion to sever the case into two separate actions: one lawsuit containing the Rosses' claims and one lawsuit containing the Reynosos' claims. On September 28, 2023, the motion to sever was granted.

At the same hearing, Wurm attempted to take up a motion for leave to amend Plaintiffs' petition. In the proposed amendment to their lawsuit in the State Action, the Rosses sought to add a claim for violation of the FDCPA against Siegert, only. Such motion along with the proposed amendment was filed the evening before the hearing and was not properly noticed to be heard pursuant to Missouri Rule of Civil Procedure 44.01(d). Given the lack of any notice, the state court declined to hear such motion at that time.

On October 14, 2023, this lawsuit was filed. On October 17, 2023, *while the instant matter was pending,* the Rosses (with the Reynosos) filed a petition for a writ of prohibition in the

4

Missouri Supreme Court seeking to, among other things, (1) reverse the severance; and (2) to grant their motion to amend their petition which would result in their proposed amendment being the operative petition. Six days later, the writ of prohibition was voluntarily dismissed because it was improperly filed in the Missouri Supreme Court. On October 23, 2023, the writ of prohibition was re-filed in the Missouri Court of Appeals. On November 3, 2023, Siegert and D&R filed suggestions in opposition to the writ petition. That same day, the Rosses' petition for a writ of prohibition was denied.

## Argument

### I. This Court does not have subject matter jurisdiction over this matter as Plaintiffs lack standing to pursue their claim for violation of the FDCPA.

#### a. Legal Standard

The purpose of a 12(b)(1) motion is to allow the court to address the threshold question of jurisdiction, as "judicial economy demands that the issue be decided at the outset rather than deferring it until trial." *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir. 1990). "A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States,* 534 F.3d 958, 962 (8th Cir. 2008) "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn,* 918 F.2d at 729.

#### b. The Complaint is devoid of allegations that Plaintiffs have suffered a concrete injury in fact.

To establish standing, Plaintiffs must show: (i) that they "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) that the injury likely was caused by

Defendants; and (iii) that judicial relief likely would redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing all three elements. *Id.* at 561. Article III standing requires a concrete injury even in the context of a statutory violation. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Critically, alleged violations of the FDCPA "do not alone provide standing" because an alleged injury in law is not an injury in fact. *Bassett v. Credit Bureau Services, Inc.*, 60 F.4th 1132, 1136 (8th Cir. 2023) (citing *Spokeo*, 578 U.S. at 341); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).

There is not a single allegation in the Complaint that asserts Plaintiffs were injured let alone allegations that sufficiently allege an actual, concrete injury. (*See* Doc. 1, ¶¶ 33-42). Plaintiffs contend that when they received the FDCPA correspondence from Wurm, they were already bearing the "emotional distress" of their current hardships and that Defendants "intended solely to cause Ross distress and suffering." (*Id.*) Not once do Plaintiffs allege that because of the FDCPA correspondence, they suffered a "concrete and particularized" injury. *See Spokeo*, 578 U.S. at 341. In other words, Plaintiffs are solely alleging an "injury in law" under the FDCPA and that alone does not establish standing. *Bassett*, 60 F.4th at 1136.

This Court has recently dealt with this exact issue in *Ebaugh v. Medicredit, Inc*. There, the defendant-debt collector sent the plaintiff a letter containing a settlement offer regarding a debt after the defendant was informed by the plaintiff's attorney in writing that the plaintiff was represented by counsel. *Ebaugh v. Medicredit, Inc.,* No. 4:23-CV-209-MTS, 2023 WL 5289226, at *1 (E.D. Mo. Aug. 17, 2023). The plaintiff filed suit and alleged that the letter violated the FDCPA including sections 1692c(c) (failure to cease communication when requested by consumer) and 1692(c)(a)(2) (failure to cease communication when consumer is represented by

6

counsel). *Id*. In her lawsuit, the plaintiff alleged that the letter alarmed, confused, and emotionally distressed her, invaded her privacy, and that she suffered out-of-pocket expenses. *Id*. at *2. The defendant filed a motion to dismiss for lack of standing which this Court granted by concluding that the plaintiff's bare allegations of injury that stem from receipt of one letter sent in violation of the FDCPA was insufficient to establish standing.

Here, Plaintiffs allege much less than the plaintiff in *Ebaugh* in terms of the injury suffered which clearly demonstrates their lack of standing. Plaintiffs contend that they suffered an injury-in-fact when Wurm forwarded them the letter from Jenkins & Kling. (Doc. 1, ¶¶ 19, 38-40). Thereafter, Plaintiffs disputed the debt which Wurm knew would require Jenkins & Kling to send a second letter under the FDCPA.15 U.S.C. § 1692g(b). Wurm received two letters from Jenkins & Kling and Plaintiffs never paid any part of the alleged debt. (*See generally* Doc. 1). Accordingly, there are no allegations that Plaintiffs have suffered any monetary, physical, or tangible harm because Plaintiffs cannot be injured by another litigant's compliance with a statute.

Without suffering a tangible harm, the inquiry turns to whether Plaintiffs have alleged an injury that has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts such as physical harm, monetary harm, or various intangible harms. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200, 210 L. Ed. 2d 568 (2021). The Complaint does not contain allegations that assert an intangible harm like stress or confusion rather, Plaintiffs contend that Defendants: (1) "harassed, oppressed and abused Ross in connection with the collection of the debt," (2) "intended solely to cause Ross distress and suffering," (3) sent the FDCPA correspondence as "nothing more than thinly veiled attempts to intimidate Ross with fraudulent allegations of debt," and (4) that Jenkins & Kling knew of the FDCPA's prohibitions on harassment but continued its course of "willful noncompliance." (Doc. 1, ¶¶ 38-41). Within

these allegations, there is no fact presented that shows this Court an emotional or other intangible injury was suffered by Plaintiffs.

Even if there were allegations regarding intangible harm, Plaintiffs' allegations must show the injury was concrete and particularized. *See Spokeo*, 578 U.S. at 341. Plaintiffs fail to allege any sort of nexus between Jenkins & Kling's alleged wrongdoing and an actual injury suffered by Plaintiffs. Such failure dooms their ability to establish standing and highlights the harassing nature of this lawsuit.[3] Even if they had established a concrete injury (which they have not), there is still no standing to sue Siegert as Plaintiffs are incapable of establishing that the alleged injury was likely caused by Siegert given it is undisputed that she did not send the letters at issue and she is not a debt collector as defined by the FDCPA (*see* Section II(b) herein).

Plaintiffs' allegations do not show that they suffered a concrete injury as a result of the alleged violation of 15 U.S.C. § 1692d and, therefore, Plaintiffs cannot meet the first element of standing. *See Lujan*, 504 U.S. at 560–61. At best, Plaintiffs' alleged injuries are hypothetical and under Article III, federal courts do not adjudicate hypothetical or abstract disputes. *See Bassett*, 60 F.4th at 1135. Accordingly, based on the Complaint alone, this Court has authority to dismiss this action for lack of subject matter jurisdiction. *See Johnson,* 534 F.3d at 962.[4]

---

[3]  Even if Plaintiffs were to amend their lawsuit to include language that the receipt of the FDCPA letters caused them emotional distress, confusion over the status of their credit scores, or other similar language that was included in Plaintiffs' denied Motion for TRO in the State Action, it would not cure the standing issue. In *Ebaugh*, this Court noted that as to emotional harm, Courts of Appeals have consistently rejected the theory that "concrete injuries" may be established by emotions such as confusion and worry alone and that the Court of Appeals for the Eighth Circuit has endorsed holdings that found that allegations of "negative emotions," alone, are insufficient to state a cognizable injury under Article III. *Ebaugh,* 2023 WL 5289226, at *2 (citing *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022) (citing *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020) & *Pennell v. Global Trust Management, LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021))).

[4]  In addition to the other reasons for lack of standing, the plaintiffs of this lawsuit are trustees of a trust while the damage claim from the alleged mental anguish runs to the individuals. Plaintiffs have not sufficiently alleged how they, as trustees, qualify as consumers under 15 U.S.C. § 1692a(3), or otherwise have standing to pursue a claim for damages to individuals.

**II.      Plaintiffs' Complaint does not allege facts that state a claim for which relief can be granted.**

   a. **Legal Standard.**

Even if this Court concludes that it does have subject matter jurisdiction over this matter, the Complaint should still be dismissed for failure to state a claim for violation of the FDCPA. To survive a motion to dismiss under Rule 12(b)(6) a plaintiff must allege sufficient facts, as contrasted with bare legal conclusions, to articulate a claim "that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To prevail on a claim pursuant to the FDCPA, plaintiff must allege and prove that (1) the plaintiff is a "consumer" within the meaning of the statute; (2) the defendant collecting the debt is a "debt collector" within the meaning of the statute; and (3) the defendant has violated by act or omission a provision of the FDCPA. *Somlar v. Nelnet Inc.,* No. 4:16-CV-01037-AGF, 2017 WL 35703, at *2 (E.D. Mo. Jan. 4, 2017) (citing *Schuller v. AllianceOne Receivables, Mgmt., Inc.*, No. 4:15 CV 298 CDP, 2016 WL 427961, at *2 (E.D. Mo. Feb. 4, 2016)).

   b. **Siegert is not a debt collector within the meaning of the FDCPA and therefore, Plaintiffs are incapable of stating a claim against Siegert.**

Siegert is not a debt collector under the FDCPA and whether someone is a debt collector is a question of law with a well-established body of authority available to a litigant prior to filing a lawsuit on such issue. Plaintiffs failed to avail themselves of such authority as they insufficiently allege that Siegert is a "debt collector" without any further factual support.

9

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute goes on to state that the term "debt collector" does not include the following:

> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F). The Eighth Circuit, citing the aforementioned portion of the statute, noted that because Congress' focus was on the practices of independent debt collectors, ***the statute excludes from the definition of "debt collector" any creditor "collecting his own debts" using his own name***. *See Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1122 (8th Cir. 2020) (citing 15 U.S.C. § 1692a(6)(F)) (emphasis added). Moreover, the Supreme Court has concluded that the "regularly collects" language seems to focus its attention on third-party collection agents working for a debt owner, ***not on a debt owner seeking to collect debts for itself.*** *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) (emphasis added).

Here, Plaintiffs fail to allege any fact that could result in this Court concluding that Siegert is a "debt collector" under the FDCPA. Plaintiffs do not assert that Siegert sent the letters at issue, nor they allege that Siegert uses interstate commerce for the principal purpose to collect debts or that Siegert regularly collects debts owed to another—because it is obvious she is not a third party collections agent. Plaintiffs are incapable of alleging that Siegert is a debt collector for purposes of the FDCPA because Siegert's connection to the debt falls squarely into the exclusionary

10

language of 15 U.S.C. § 1692a(6)(F). *See Reygadas, LLC*, 982 F.3d at 1122 (citing 15 U.S.C. § 1692a(6)(F)). Further, Plaintiffs also fail to allege that Siegert attempted to collect the debt at all from Plaintiffs as it is clear from the face of the Complaint and its exhibits that Jenkins & Kling (not Siegert) sent the relevant letters to Amundsen Davis and Wurm (not Plaintiffs).

On the face of the pleading, Plaintiffs fail to state a claim against Siegert, and the Complaint should be dismissed against her with prejudice. Moreover, the Motion for TRO in the State Action, the unsuccessful writ of prohibition, and now this federal lawsuit make it three separate times that Siegert has been forced to expend fees to educate Plaintiffs regarding compliance with the FDCPA. Plaintiffs' decision to name Siegert was either to continue their quest to harass Siegert by way of litigation or because Plaintiffs' counsel failed to adequately research this issue. In either scenario, this suit was brought in bad faith and Siegert requests her attorneys' fees expended herein. *See* 15 U.S.C.A. § 1692k ("On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.").

    c. **Jenkins & Kling did not violate 15 U.S.C. § 1692d and therefore, Plaintiffs fail to state a claim.**

Plaintiffs contend, with no factual support, that Jenkins & Kling violated 15 U.S.C. § 1692d. (Doc. 1, ¶ 38). Such section of the statute states the following:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

15 U.S.C. § 1692d. Plaintiffs do not assert that Jenkins & Kling engaged in any of the listed violations in subsections (1) through (6) of § 1692d, and Plaintiffs do not allege any other specific harassing conduct that would violate this section of the statute. Rather, Plaintiffs' only allegation is that Jenkins & Kling harassed, oppressed, and abused Plaintiffs by sending the FDCPA letters

to Amundsen Davis/Wurm. Plainly, there is no indication in the Complaint or the exhibits thereto that Jenkins & Kling's alleged conduct qualified as a prohibited debt collection practice under 15 U.S.C. § 1692d.

Plaintiffs purport to generally argue that Jenkins & Kling improperly alleged a debt owed based on the attorneys' fees provision that only allows Siegert to receive such funds if or when she is the prevailing party in the State Action. (Doc. 1, Exhibit A). However, the definition of "debt" under the statute contemplates the collection of an alleged obligation that has not yet been reduced to judgment. The FDCPA provides in pertinent part:

> (5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(6)(5).

The obligation that is the subject of the FDCPA correspondence from Jenkins & Kling clearly meets this definition. In the State Action, Jenkins & Kling, on behalf of Siegert filed a third-party petition against Plaintiffs, two consumers, and alleged an obligation due from the consumers in connection with a residential sales contract, which is categorized as a household debt for purposes of the FDCPA. That is why contemporaneously with the third-party petition Jenkins & Kling was required by law to send Wurm a written notice. 15 U.S.C. § 1692g. Then, when Wurm disputed the debt as Plaintiffs are entitled to do under the statute, Jenkins & Kling was thereby required to send a second letter. *Id*. ***If Plaintiffs' version of the law is accurate, all claims for attorneys' fees would violate the FDCPA***.

Plaintiffs' Complaint offers nothing more than unsupported assertions and conjecture in support of their claim that Jenkins & Kling engaged in conduct prohibited by the FDCPA.

12

Plaintiffs therefore fail to state a valid FDCPA claim, and the Complaint should be dismissed as to Jenkins & Kling.

> III. **The Complaint should be dismissed because Plaintiffs are improperly seeking relief from a failed Motion for TRO and failed writ of prohibition in the State Action.**

At the center of their lawsuit, Plaintiffs are suing Siegert for taking a justifiable adversarial position in the State Action. Plaintiffs seek relief here that they attempted to get from the state court by way of their unsuccessful Motion for TRO. The order denying the Motion for TRO explicitly noted that there was, "no present intent to issue collection letters outside the litigation." (Doc. 1, Exhibit D). Plaintiffs do not allege that Jenkins & Kling has taken any further action "to issue collection letters outside the litigation," but yet, a federal lawsuit was filed. Plaintiffs were told by the state court they failed to establish irreparable harm and now, they are improperly appealing their complaints to a federal court for no other reason to harass and cause Siegert to spend more money on legal fees. Plaintiffs are improperly trying to split their cause of action in an attempt to receive a favorable outcome from this Court they didn't receive in the State Action.

Even more egregious is the fact that while this lawsuit was pending, Plaintiffs attempted to have their petition in the State Action amended to include a claim against Siegert for violation of the FDCPA. Had Plaintiffs writ of prohibition been successful, it would have resulted in the Rosses (and the Reynosos) having a state lawsuit against Siegert and the Rosses having a federal lawsuit against Siegert and Jenkins & Kling for the same alleged violation of the FDCPA. Not only have Plaintiffs created a mess but they are also wasting judicial resources and needlessly increasing Siegert's litigation costs. Plaintiffs' harassment of Siegert and now Jenkins & Kling through the courts is misconduct that should not be tolerated and is further reason for this Court to dismiss this action.

**Conclusion**

Plaintiffs lack standing under Article III and this Court can safely dispose the Complaint on such basis alone. In the event this Court determines subject matter jurisdiction exists, the Complaint wholly fails to state a claim against Defendants and improperly names Siegert as a party. Therefore, the Complaint should be dismissed with prejudice and Siegert should be awarded her fees.

                                      Respectfully submitted,

                                      JENKINS & KLING, P.C.

                                      By: /s/ *Katherine I. McLaughlin*

OF COUNSEL:                    Ronald E. Jenkins #23850MO
JENKINS & KLING, P.C.      Michael P. Stephens, #37491MO
                                      Katherine I. McLaughlin, #69734MO
                                        Liam R. Brannon, #73640MO
                                        150 N. Meramec Ave., Suite 400
                                        St. Louis, Missouri 63105
                                        (314) 721-2525 Phone
                                        (314) 721-5525 Fax
                                        rjenkins@jenkinskling.com
                                        mstephens@jenkinskling.com
                                        kmclaughlin@jenkinskling.com
                                        lbrannon@jenkinskling.com

                                        *Attorneys for Defendants Rachel L. Siegert*
                                        *and Jenkins & Kling, P.C.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 8, 2023 the foregoing was filed electronically to be served to all counsel of record by operation of the Court's electronic filing system.

/s/ *Katherine I. McLaughlin*