IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DR. WHITNEY ROSS, TRUSTEE and DR. IAN ROSS, TRUSTEE**, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Cause No. 4:23-cv-01295-MTS<br>)<br>) |
| **RACHEL SIEGERT and JENKINS & KLING, P.C.**, | )<br>)<br>) |
| Defendants. | ) |

**DEFENDANTS RACHEL L. SIEGERT AND JENKINS & KLING, P.C.'S MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION FOR SANCTIONS AGAINST WILLIAM WURM, AMUNDSEN DAVIS, LLC, DR. WHITNEY ROSS, TRUSTEE, AND DR. IAN ROSS, TRUSTEE**

COME NOW Defendants Rachel Siegert ("**Siegert**") and Jenkins & Kling, P.C. ("**Jenkins & Kling**") (collectively, "**Defendants**"), by and through counsel, and submit their Memorandum in Support of their Joint Motion for Sanctions against the law firm of Amundsen Davis, LLC and William R. Wurm (collectively, "**Wurm**") and Plaintiffs Dr. Whitney Ross and Dr. Ian Ross, as trustees of the Ross Family Trust dated October 21, 2021 (collectively, "**Plaintiffs**"). In support thereof, Defendants respectfully submit to this Honorable Court as follows:

I.     Introduction

This case was filed on the heels of a series of unfavorable decisions for Plaintiffs in an ongoing state court case currently pending in St. Louis City. In this action, Plaintiffs claim that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**") by sending Wurm two written letters mandated by § 1692g under the FDCPA. Siegert, by and through Jenkins & Kling, took a justifiable, adversarial position to Plaintiffs in the underlying state

1

court case. In response, Plaintiffs and Wurm engaged in a pattern of harassing behavior including sending erratic and threatening emails, initiating frivolous motions and appellate filings, and filing the instant action in bad faith.

The Complaint is utterly deficient as it fails to establish standing to sue under the FDCPA, fails to allege a sufficient violation of § 1692d, fails to plead sufficient facts in support of the claimed § 1692d violation, and fails to provide any explanation as to why Siegert, an individual, is a named defendant in this lawsuit. Further, the issue of whether Defendants violated the FDCPA was already adjudicated or ruled on in an ongoing state court action whereby the court summarily denied a motion for temporary restraining order brought by Plaintiffs. In other words, Plaintiffs and Wurm did not get their way in state court and are now hoping for a different outcome with this Court, forcing Siegert to spend more money on legal fees in the process.

For the reasons set forth herein, Defendants respectfully request that this Court sanction Wurm and Plaintiffs for violations of Federal Rule of Civil Procedure 11.

## II.     Relevant Factual and Procedural Summary

Siegert is an individual and the former owner of a home located at 1218 Kraft Street, St. Louis, Missouri 63139. (Doc. 1, ¶ 10). On March 5, 2020, Siegert and Plaintiffs, in their individual capacities, entered into a residential sale contract whereby Siegert agreed to sell, and Plaintiffs agreed to purchase, the Kraft Street home. (Doc. 1, Exhibit A). In connection with the sale, Siegert completed a seller's disclosure statement dated March 5, 2020 wherein she represented she was not aware of certain issues and defects allegedly present within the home. (*Id*.)

Three years later, in their capacities as trustees of a trust, Plaintiffs filed a petition in the Circuit Court of the City of St. Louis, which had the original case number of 2322-CC00955, but later severed into case number 2322-CC08849 (collectively and as severed, the "**State Action**"). Plaintiffs jointly filed their petition in the State Action with another couple and set of plaintiffs,

the Reynosos, despite the fact that the two sets of plaintiffs alleged different claims against different parties for different houses.

On July 17, 2023, in the State Action, Siegert filed her answer and affirmative defenses and a third-party petition for declaratory judgment against Plaintiffs to declare that Siegert met all her obligations under the residential sale contract. (Doc. 1, ¶ 14). The claim includes a request for attorneys' fees pursuant to a fees provision that allows a prevailing party to recover attorneys' fees in the event of a dispute between the parties and pursuant to R.S.Mo. § 527.010. (Doc. 1, Exhibit A). That same day, Jenkins & Kling sent Wurm a written demand and notice of debt letter pursuant to 15 U.S.C. § 1692g. (Doc. 1, Exhibit B).

On August 21, 2023, Wurm disputed the validity of the debt via e-mail and requested that Jenkins & Kling verify the debt, which obligated Jenkins & Kling to send a second letter to Wurm under § 1692g. (Doc. 1, ¶ 23); *see also* 15 U.S.C. § 1692g. On August 25, 2023, Jenkins & Kling responded with the second letter verifying the alleged debt pursuant to § 1692g. (Doc. 1, Exhibit C). On August 28, 2023, Wurm emailed Jenkins & Kling with an outrageous response to its required verification of debt letter under § 1692g. A true and accurate copy of the email is attached hereto as **Exhibit "1"**. Rightfully, Jenkins & Kling did not respond.

Then, on September 4, 2023, the Rosses filed a motion for temporary restraining order ("**Motion for TRO**") against Siegert in the underlying matter. A true and accurate copy of the Motion for TRO is attached hereto as **Exhibit "2"**. The Motion for TRO alleged Plaintiffs suffered irreparable harm from "Siegert's harassing letters [that] caused emotional distress" in addition to "trauma" allegedly sustained from the alleged construction defects, faulty home inspections, and fraudulent misrepresentations stemming from the purchase and sale of Plaintiffs' home. (Exhibit 2 at 4). As the record reflects in the State Action, the state court denied the Motion for TRO. More

3

importantly, Jenkins and Kling agreed, as stated in the order denying the Motion for TRO, that it had "no present intent to issue collection letters outside the litigation." (Doc. 1, Exhibit D). To date, no other communications concerning the debt have been sent to Wurm and at no point has Jenkins & Kling ever communicated directly with Plaintiffs regarding the alleged debt.

On October 17, 2023, *while this matter was pending*, Plaintiffs filed a petition for a writ of prohibition in the Missouri Supreme Court seeking, among other things, to grant a motion to amend the state court petition, which attempted to add a claim for an alleged violation of the FDCPA against Siegert, only. The writ was voluntarily dismissed because it was improperly filed and then subsequently re-filed with the Missouri Court of Appeals in the Eastern District. On November 3, 2023, the Court of Appeals summarily denied the writ of prohibition.

Now, after having the Motion for TRO and writ denied, Plaintiffs and Wurm seek judicial review with this Court, frivolously claiming Defendants violated § 1692d of the FDCPA.

### III.  Standard of Review

"Rule 11 sanctions may be warranted when a pleading is 'presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase in the cost of litigation, [when] the claims, defenses, and other legal contentions are [not] warranted by existing law, [or] contains allegations or factual contentions that lack evidentiary support.'" Fed. R. Civ. P. 11(b)(1-3); *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006). The Eighth Circuit has held that Rule 11 operates in part on the assumption that:

> that an attorney [will] conduct a reasonable inquiry of the factual and legal basis for a claim before filing. To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis. Whether the attorney's inquiry is reasonable may depend on factors such as whether counsel had to rely on a client for factual information, or whether the attorney depended on forwarding counsel or another member of the bar. The District Court must

4

      determine whether a reasonable and competent attorney would believe in the merit of an argument.

*Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003)).

"Rule 11 provides a specific procedure to be followed when sanctions are considered." *Clark*, 460 F.3d at 1008. "A district court may impose Rule 11 sanctions on its own initiative, but it must first enter an order describing the specific conduct that appears to violate Rule 11(b) and direct the attorney to show cause why he has not violated the rule." *Id.* (citing Fed. R. Civ. P. 11(c)(1)(B) and *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 623 (8th Cir. 2004). "Then, when imposing sanctions, the court is required to describe the conduct determined to constitute a violation of Rule 11 and explain the basis for the sanction chosen." *Id.* (citing Fed. R. Civ. P. 11(c)(3).

### IV.  Argument

**a. <u>Wurm and Plaintiffs filed this action for an improper purpose in that they intended to harass and needlessly increase the costs of litigation for the Defendants in violation of Rule 11(b)(1)</u>.**

    i. <u>Wurm hastily filed this action without conducting a reasonable inquiry into the claimed violation of the FDCPA warranting sanctions.</u>

The face of the Complaint demonstrates that Wurm did not conduct a reasonable inquiry into the factual and legal basis for an alleged violation § 1692d before filing this action. Any cursory prefiling investigation would have uncovered an insufficient legal basis for the inclusion of Siegert as a named defendant and an insufficient basis to establish standing to sue for a § 1692d violation. Specifically, the Complaint lacks any legal merit and factual support by virtue of the threadbare recitals of the elements for a § 1692d violation claim, the absence of a concrete particularized injury, and the improper inclusion of Siegert as a named defendant. Wurm's shortcomings in diligently and reasonably investigating whether his clients had a good faith basis

5

to allege a § 1692d violation shows that his obvious and unjustifiable disdain for Defendants is the actual basis for this lawsuit.

Further, Wurm did not need to rely on Plaintiffs for information in evaluating whether there was a good faith basis to assert a § 1692d violation. Wurm, a partner at a large national law firm, certainly has the resources available to diligently research the requirements of standing and asserting a claim § 1692d. *See Coonts*, 316 F.3d at 753. Wurm knew or should have known that an attorney is ethically prohibited from filing lawsuits without a good faith and diligent investigation into the facts and applicable law. A reasonable and competent attorney would not believe the claims alleged by Wurm and Plaintiffs in the Complaint had any merit. *See id*. On this basis alone, this Court should order that Plaintiffs and Wurm be monetarily sanctioned accordingly and be ordered to pay Defendants' attorneys' fees.

      ii. <u>Plaintiffs and Wurm have engaged in an unethical and erratic pattern of behavior that warrants monetary sanctions.</u>

The harassing and erratic behavior by Plaintiffs and Wurm is best demonstrated by the fact that since May of this year, Wurm's efforts have resulted in two state court lawsuits, two arbitrations, an attempted writ to the Missouri Supreme Court, an attempted writ to the Missouri Court of Appeals, and now, a lawsuit in federal court. All the while, Plaintiffs' interests have not been advanced in any forum, in any way. The instant matter highlights such harassment as judicial resources and Plaintiffs' money are being wasted by filing a federal lawsuit on an alleged violation that Plaintiffs simultaneously and unsuccessfully attempted to bring in the State Action. Ultimately, sanctions are warranted for several reasons.

First, prior to filing the instant action, Wurm sent Defendants a threatening email, claiming he would file suit against Siegert in federal court for violating the FDCPA unless Siegert paid $10,000.00 to settle "this specific issue." A true and accurate copy of the email is attached hereto

as **Exhibit "3"**. This email was in no way a good faith settlement offer and is problematic for several reasons: (1) Siegert is not subject to the FDCPA because she does not constitute a debt collector under the statute and Wurm clearly did not research "this specific issue"; (2) the alleged FDCPA violation arose out of Siegert's defense to Plaintiffs' claim in the State Action and, therefore, should have been brought in State Action to avoid wasting judicial resources and splitting claims between two different courts; and (3) a statutory violation of the FDCPA is capped at $1,000.00. *See* § 1692k(a)(2)(A). To surpass that cap, Plaintiffs would need to prove actual damages. § 1692k(a)(1). The aforementioned email failed to provide any evidence of emotional injuries or actual damages as claimed, but instead, merely demanded an arbitrary sum. Notably, the email was sent within an hour after the Motion for TRO was heard and denied.

Second, Wurm has already sought adjudication or a ruling from the state court in the State Action for Plaintiffs' alleged emotional distress and suffering by filing a Motion for TRO. (*See* Exhibit 2). The state court denied the Motion for TRO and Jenkins & Kling specifically agreed with the state court that it had "no present intent to issue collection letters outside the litigation." (Doc. 1, Ex. D). Siegert has never personally attempted to collect a debt from Plaintiffs, Jenkins & Kling has likewise not made any further effort to collect the alleged debt, and the Complaint does not allege that this firm or Siegert have done so. The issue of whether Plaintiffs suffered irreparable harm from Jenkins & Kling's FDCPA correspondence is moot. Wurm should be prohibited from seeking reconsideration of the issue under the guise of a separate, frivolous action in federal court.

Third, Wurm previously attempted to file a motion to amend his state court petition in the State Action, which included a claim for violation of the FDCPA against Siegert, only. The state court, however, declined to hear such motion because Wurm failed to give proper notice under the

7

Missouri Rules of Civil Procedure. Instead of re-noticing the motion up properly for a hearing in the State Action to include a claim for violation of the FDCPA, Plaintiffs and Wurm sought unnecessary, drastic relief by filing a writ of prohibition with the Missouri Supreme Court while this case was pending. That writ was voluntarily dismissed because it was improperly filed and then, it was re-filed with the Missouri Court of Appeals in the Eastern District. The Court of Appeals denied the writ of prohibition within twenty-four hours after the responding parties, including Siegert, submitted briefing on the issues.

Lastly, Wurm should be monetarily sanctioned to deter the future filing of lawsuits against law firms that take adversarial positions in defense of their clients. The two letters Jenkins & Kling sent were required to be sent under § 1692g and were each addressed to Wurm—not Plaintiffs. (*See* Doc. 1, Exhibits B and C). Jenkins & Kling did not, and has not, directly communicated with Plaintiffs in connection with the alleged debt under the FDCPA and critically, that is not an allegation in the Complaint. There is no legal basis for suing a debt collector for sending FDCPA compliant letters to a plaintiff's attorney. Moreover, the Complaint fails to even address the substance of the letters and how such letters specifically violated § 1692d. It appears Plaintiffs and/or Wurm are frustrated with the requirements of the FDCPA, in general. If that is the case, such frustration should be directed towards the legislative branch, not Siegert and local law firms.

Ultimately, Wurm's disdain towards Jenkins & Kling for simply complying with the FDCPA concerning Siegert's declaratory judgment action in the State Action is unjustifiable.[1] Wurm's intention behind filing this action was clearly for no other purpose but to harass Defendants. As such, this Court should issue an order dismissing Defendants from this action with

---

[1] *See e.g.*, Doc [1], ¶ 37 ("Defendants violated § 1692d…in connection with the collection of a debt—indeed, there exists no justification for such letters apart from malice"); *see also* **Exhibit "B"**, p. 4 ("Siegert's harassing letters caused Plaintiffs' severe emotional distress—ostensibly the letters' despicable purpose").

8

prejudice and ordering Plaintiffs and Wurm to pay Defendants' attorneys' fees and costs in connection with this frivolous and bad faith lawsuit. *See* Fed. Civ. P. 11(b)(1) and 11(c)(1,5); 15 U.S.C. § 1692k(a)(3).

> **b. Plaintiffs' claims and allegations are not warranted by existing law and fail to include any factual contentions that have evidentiary support in violations of Rule 11(b)(2-3).**
>
>> i. <u>This Court lacks subject matter jurisdiction under Rule 12(b)(1) because Plaintiffs lack standing under Article III.</u>

It is evident from the Complaint that the claims alleged are not warranted by existing law in that Plaintiffs lack any standing to pursue a claim under the FDCPA. *See* U.S. Const. art. III, § 2. To establish standing, Plaintiffs must show they: "(i) suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 461 (8th Cir. 2022). It is clear Plaintiffs cannot establish any of these required elements.

First, the law is clear that "article III requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also Bassett v. Credit Bureau Services, Inc.*, 60 F.4th 1132, 1136 (8th Cir. 2023) (citing *Spokeo*, 578 U.S. at 341) (violations of the FDCPA "do not alone provide [Plaintiffs] standing"). And this Court has recently ruled that "bare allegations" of emotional distress or emotional injuries are not cognizable under the FDCPA. *Ebaugh v. Medicredit, Inc.*, No. 4:23-CV-209-MTS, 2023 WL 5289226, at *2-3 (E.D. Mo. Aug. 17, 2023) (citing Fifth, Sixth, Seventh, and Eighth Circuit precedent in support); *see also Ojogwu*, 26 F.4th 462-63. In *Ebaugh*, this Court cited to *Ojogwu*, among other cases, in its opinion dismissing plaintiff's complaint for failing to allege a cognizable concrete injury in the complaint. *Ebaugh*, 2023 WL 5289226, at *2-4. Here, the Court should issue that same ruling. Plaintiffs have failed to allege any injury let alone a concrete particularized injury supported by physical

9

manifestations or a qualified medical diagnosis. *Ojogwu*, 26 F.4th at 463. Thus, Plaintiff's cannot prove the first element of standing—that they sustained cognizable concrete injuries.

Second, there is no factual or evidentiary support that Jenkins & Kling is responsible for directly causing Plaintiffs' alleged emotional injuries. The Complaint itself states that the alleged "emotional distress and suffering" stems from Plaintiffs' home—not from letters directed to and received by Wurm. (Doc. 1, ¶ 22). Additionally, the Motion for TRO contained allegations that the original cause of Plaintiffs' emotional distress was out of fear that the notice of debt letters would impact their credit scores. Plaintiffs, however, have made no allegations in the Complaint nor can they show Defendants intend to take such action. (*See* Doc 1. Exhibit D). Ultimately, Plaintiffs have not alleged and cannot allege in good faith that Jenkins & Kling directly caused them any concrete particularized injuries. (*See* Exhibit 2 at 4). As such, Plaintiffs cannot prove the second element of standing.

Third, Plaintiffs' remedy for redress of the alleged violation should not lie with this Court but with the state court in State Action. The petition in the State Action already claims injuries for emotional distress from the alleged defects present in Plaintiffs' home. And Missouri law provides an adequate remedy for such alleged injuries provided Plaintiffs adequately show the requisite evidentiary support. Thus, this Court should not be tasked with redressing Plaintiffs' injuries when there is already an ongoing state court action concerning the same transaction and occurrences that the Complaint arises from. As such, Plaintiffs cannot show the third element of standing.

    ii.  <u>Jenkins & Kling did not violate the FDCPA.</u>

There is no law that explicitly provides a debt collector violates § 1692d by simply sending the requisite notice letters under § 1692g. Nor does the law provide for a violation of § 1692d when a creditor files suit to collect a debt in an underlying state court action, even if such suit is

10

found to be meritless. (*See* Doc. 1, ¶¶ 14-26); *see also Hickman v. Alpine Asset Mgmt. Grp., LLC*, No. 11-1236-CV-S-MJW, 2012 WL 4062694, at *4 (W.D. Mo. Sept. 14, 2012) (concluding the filing of a lawsuit to collect a debt is not harassment or abuse in violation of § 1692d); *Finch v. Slochowsky & Slochowsky*, LLP, No. 19-CV-6273, 2020 WL 5848616, at *3 (E.D.N.Y. Sept. 30, 2020); *Okyere v. Palisades Collection*, LLC, 961 F. Supp. 2d 519-20 (S.D.N.Y. 2013).

Jenkins & Kling has already agreed in a court order in the State Action that it had no present intent to collect the alleged debt outside of that litigation. (Doc. 1, Ex. D). Nonetheless, the FDCPA contemplates the collection of an alleged obligation that has not yet been reduced to judgment. *See* 15 U.S.C. § 1692a(6)(5). Moreover, there is no legal basis for the theory that attorneys' fees—claimed by a creditor pursuant to a valid contract and attorneys' fees statutory provision—fails to constitute a "debt" under the FDCPA.  Thus, Plaintiffs' only claim is that Jenkins & King violated § 1692d by simply sending the required notice of debt letters under § 1692g. Such a claim, however, fails to state a claim upon which relief may be granted under Rule 12(b)(6). As such, this action should never have been filed because the allegations in the Complaint lack the requisite factual and evidentiary support required to maintain an action under the FDCPA evidenced by Wurm's aforementioned failures in making a reasonable inquiry into the applicable law.

Because Plaintiffs cannot show standing or state a claim for which relief may be granted, Plaintiffs' claims and allegations are not warranted by existing law and fail to include any factual contentions that have evidentiary support in violations of Rule 11(b)(2-3). As such, Wurm should be sanctioned and ordered to pay Defendants' reasonable attorneys' fees and costs expended in defending this lawsuit.

11

      iii.   <u>Siegert is not a "debt collector" subject to the FDCPA.</u>

Plaintiffs allege in the Complaint that Siegert, an individual, is a debt collector pursuant to § 1692a(6). This claim, however, is not warranted by existing law and was asserted with the sole intention to harass Siegert. § 1692a(6) plainly reads that:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

§ 1692a(6); *see also Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1122 (8th Cir. 2020) (citing *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 464 (7th Cir. 2018), stating § 1692a(6) has "come to be known as the 'principal purpose' and the 'regularly collects' definitions"); *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) (the Supreme Court concluding that the "regularly collects" definition "seems to focus [its] attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." The Supreme Court further concluded: "all that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another'") (<u>emphasis added</u>).

Here, Plaintiffs and Wurm cannot conceivably argue or assert such allegations in good faith for several reasons. First, Siegert is an individual whose principal purpose is not debt collection and Plaintiffs have no basis to allege otherwise and have not alleged otherwise. Second, Siegert does not regularly collect debts, nor does she engage in indirect or direct debt collection on behalf of others nor is there an allegation that she has engaged in such debt collection. Third, Siegert's role in terms of the FDCPA is that of a creditor who is owed an obligation from Plaintiffs arising from the contract for the sale of a residential home that is now the subject of litigation, triggering the prevailing attorneys' fees clause therein. 15 U.S.C. § 1692a(3),(5). Whether Siegert had control

over Jenkins & Kling regarding her representation is not determinative of her status as a debt collector under the FDCPA. (Doc. 1, ¶ 17).

Given that the Complaint fails to allege any facts sufficient to subject Siegert to the FDCPA under either the "principal purpose" or "regularly collects" definitions, there can be only two reasons why Plaintiffs and Wurm named Siegert as a party to the Complaint: (1) to harass Siegert and cause her to incur additional, unnecessary attorneys' fees; or (2) because Wurm and Amundsen Davis failed to reasonably research this area of the law prior to initiating a federal lawsuit. Such conduct in either instance is sanctionable.

## V.  Conclusion

The primary purpose for Rule 11 sanctions is to deter attorney and litigant misconduct. For the reasons stated herein, Defendants have adequately demonstrated the extent and severity of Plaintiffs' and Wurm's misconduct. It is clear that Siegert and Jenkins & Kling were targets of harassment. As such, this Court should sanction Plaintiffs, Wurm, and Amundsen Davis for violating Rule 11(b)(1-3) and issue an order:

1.) dismissing Plaintiffs' Complaint with prejudice;

2.) directing Plaintiffs, William Wurm, and Amundsen Davis, LLC to reimburse and pay Defendants for their reasonable attorneys' fees and costs expended in defending this lawsuit;

3.) for monetary sanctions against Plaintiffs, William Wurm, and Amundsen Davis, LLC; and

4.) for all such other relief as the Court deems just and proper under Federal Rule of Civil Procedure 11.

                                              Respectfully submitted,

                                              JENKINS & KLING, P.C.

                                              By: /s/  *Michael P. Stephens*

OF COUNSEL:                     Ronald E. Jenkins #23850MO
JENKINS & KLING, P.C.      Michael P. Stephens, #37491MO
                                              Katherine I. McLaughlin, #69734MO
                                              Liam R. Brannon, #73640MO
                                              150 N. Meramec Ave., Suite 400
                                              St. Louis, Missouri 63105
                                              (314) 721-2525 Phone
                                              (314) 721-5525 Fax
                                              rjenkins@jenkinskling.com
                                              mstephens@jenkinskling.com
                                              kmclaughlin@jenkinskling.com
                                              lbrannon@jenkinskling.com

                                              *Attorneys for Defendants Rachel L. Siegert*
                                              *and Jenkins & Kling, P.C.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 8, 2023 the foregoing was sent to all counsel of record via Certified Mail and First-Class Mail pursuant to Federal Rule of Civil Procedure 5(b)(2).

The undersigned hereby further certifies that on November 30, 2023, the foregoing was filed electronically to be served to all counsel of record by operation of the Court's electronic filing system.

/s/ Michael P. Stephens