IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DR. WHITNEY ROSS, ) | |
| ) | |
| DR. IAN ROSS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 4:23-CV-1295-MTS |
| ) | |
| RACHEL SEIGERT, ) | |
| ) | |
| JENKINS & KLING, P.C., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 11 MOTION FOR SANCTIONS

COME NOW Plaintiffs Whitney Ross and Ian Ross ("Plaintiffs"), as well as William R. Wurm responding on his own behalf and responding on behalf of Plaintiffs, and for their response to this Defendants Rachel Siegert's and Jenkins Kling, P.C.'s (collectively, "Defendants"), Motion for Sanctions, state as follows:

## INTRODUCTION

Defendants ineffectively assert that Plaintiffs and Wurm should be sanctioned under Federal Rule of Civil Procedure 11 because: (1) the Complaint was filed for the allegedly-improper purpose of harassing and increasing the costs of litigation; and (2) Plaintiffs' claims are not "warranted by existing law and fail to include any factual contentions that have evidentiary support. . . ." (Doc. 18) Memo. in Supp. of Mot. for Sanctions at pp. 5,9 ("MFS").

Page **1** of **13**

# ARGUMENT

### A.  Standard.

"Rule 11 establishes an objective standard of reasonable conduct of attorneys and litigants." *Franklin v. Pinnacle Ent., Inc.*, 289 F.R.D. 278, 286 (E.D. Mo. 2012), *modified in part*, No. 4:12-CV-307 CAS, 2013 WL 11235897 (E.D. Mo. Jan. 28, 2013).

> A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only "patently frivolous" evidence is offered to support factual contentions, sanctions can be imposed. If, however, the evidence supporting the claim is reasonable, but simply "weak" or "self-serving," sanctions cannot be imposed.

*Id.*, quoting *Thompson v. RelationServe Media, Inc*., 610 F.3d 628, 665 (11th Cir. 2010).

> Although the timing of sanctions rests in the discretion of the trial judge, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.

*Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) (quotation marks and citation omitted). "The Eleventh Circuit's position is consistent with the Rules Advisory Committee that 'anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation . . . .'" *Id*. (quoting Fed. R. Civ. P. 11 (Advisory Committee Notes, 1983 Amendment)); *see also* Advisory Committee Notes, 1993 Amendment ("[Rule 11] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. . . ." "Ordinarily [a Rule 11] motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely."), *and Brookins v. Caterpillar Inc*., No. 3:19-CV-162, 2020 WL 13564889, at *3 (D.N.D. Jan. 29, 2020) ("Caterpillar knew the bases for its Rule 11 motion as to the Brookins's fraud claim soon after being served with the complaint on July 5, 2019. **Instead of seeking sanctions in state court at that time**, Caterpillar removed the case to federal court,

**moved to** dismiss the complaint, moved for a hearing on its motion, and participated in that hearing—all before it served the Brookins with its Rule 11 motion. . . . Caterpillar had a duty to mitigate costs and should have promptly served the Brookins with its Rule 11 motion when it knew the bases for its motion."). Relatedly, "[i]n determining whether a violation of Rule 11 has occurred, this court must apply an "objective reasonableness" standard to determine whether the pleading was frivolous, groundless, or advanced for an improper purpose." *Temple v. WISAP USA in Texas*, 152 F.R.D. 591, 619 (D. Neb. 1993) (citing *Miller v. Bittner*, 985 F.2d 935, 938 (8th Cir. 1992)).

      **B.**    <u>**Plaintiffs' Complaint was filed after a more-than reasonable inquiry into the factual and legal bases therefor.**</u>

"To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018). "[A] a party may properly be sanctioned if its claim or motion 'did not have any basis in fact;' if the party failed to present any facts supporting the claim or motion; or if the claim or motion was based on immaterial factual allegations." *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 341 (N.D. Iowa 2007) (quoting and *Coonts v. Potts*, 316 F.3d 745, 752 (8th Cir. 2003)). The Complaint's factual allegations demonstrate Plaintiffs' legitimate claim. Compl. at (*passim*). Indeed, the Complaint states that Defendants send Plaintiffs debt collection letters for which no debt existed or exists, given that the purported debt is based upon a prevailing parties clause in litigation that has yet to determine a prevailing party. Compl. at ¶¶ 10, 13, 19, 20-22, 24-25, 27, 31, 38-44.

Defendants' alleged inquiry failure comprises: (1) "the absence of a concrete particularized injury;" and (2) "the improper inclusion of Siegert as a named defendant." MFS at p. 5; *see also* MFS at p. 11-12. First, Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss

explains that Plaintiffs sufficiently plead a concrete injury in fact and that Siegert is a proper Defendant given her inherent control over and agency relationship with Jenkins & Kling. (Doc. 26). Plaintiffs' Complaint (Doc. 1 at ¶ 27) and Response also elucidates that they have a good faith basis at law and undertook a reasonable inquiry into the applicable law, as to Siegert's inclusion as a named defendant: "Vicarious liability under the FDCPA is appropriate when a client exercises control over the conduct or activities of the attorneys it has hired for debt collection." *Chapman v. J & M Sec.*, No. 4:15CV1042 TCM, 2015 WL 5785952, at *3 (E.D. Mo. Oct. 1, 2015) (quoting *Kniley v. Citibank, N.A.*, 2015 WL 1535668, *4 (N.D. Cal. Apr. 6, 2015)). Defendants cite to no controverting case law. MFS at pp. 11-12 ("[w]hether Siegert had control over Jenkins & Kling regarding her representation is not determinative of her status as a debt collector under the FDCPA.").

Defendants also allege that the purported debt is a legitimate debt (due and owing) and thus, they did not violate the FDCPA by sending letters to collect such debt. MFS at pp. at 10-11 ("the FDCPA contemplates the collection of an alleged obligation that has not yet been reduced to a judgment."). Missouri law, which governs this issue, explains why Defendants' argument cannot be true:

> When a contract provides for payment of attorney's fees and costs expended to enforce the contract, a trial court is required to award such fees and costs to the prevailing party. This Court has **defined a "prevailing party"** for purposes of a contractual award as "**the party prevailing on the main issue in dispute**, even though not necessarily to the extent of its original contention."

*Desu v. Lewis*, 427 S.W.3d 843, 844–45 (Mo. Ct. App. 2014) (internal citation omitted) (emphasis added). Importantly, there have been no judgments or substantive orders issued by the Missouri state trial court, which is a prerequisite to a finding of a "prevailing party." *E.g.*, *Hammett v. Atcheson*, 438 S.W.3d 452, 465 (Mo. Ct. App. 2014) ("The prevailing party is the party that obtains

a judgment from the court, regardless of the amount of damages." "Only some relief from the court" is required to be considered the prevailing party." (internal citations and quotation marks omitted)). Therefore, the purported debt, even within Defendants' own framework, cannot be a legitimate debt as the trial court has not identified a "prevailing party"—indeed, Plaintiffs are as much prevailing parties as Defendants in that state court matter.

      C.      **Plaintiffs and Wurm have perpetrated no unethical behavior.**

Defendants argue that Plaintiffs' and Wurm's purportedly unethical and erratic behavior warrant monetary sanctions. MFS at p. 6. Defendants go further: "**Wurm's efforts have resulted in two state court lawsuits, two arbitrations, an attempted writ . . . and now a lawsuit in federal court**." MFS at p. 6 (emphasis added).

These allegations misrepresent the facts. First, Wurm filed just one lawsuit in state court on Plaintiffs' behalf, which only became two lawsuits after Siegert moved to sever the one case into two. Plaintiffs contested this motion to sever on the basis it would inherently increase costs. Second, other defendants in the underlying matter filed motions to compel arbitration, which Plaintiffs contested on the basis of judicial economy and efficiency. Defendants in this matter did not contest the arbitration motions, to the extent they now claim increased costs therefrom. Third, the writ at issue was a legitimate interlocutory appeal of the severance motions' propriety, again, arguing that severance will increase costs. Fourth and finally, Plaintiffs gave Defendants months and every opportunity to remediate Defendants' wrongdoing—namely, Defendants could have simply admitted there was no debt in their second letter, which Defendants send in response to Plaintiffs' request that Defendants verify the debt.

The foregoing unequivocally demonstrates that ONLY Defendants' actions created the foregoing "increased costs," which Plaintiffs contested. Defendants' filing of a motion to dismiss

and then, a nearly identical Rule 11 Motion for Sanctions, further unnecessarily increased costs and wasted judicial resources when the motion to dismiss alone could address the issues at hand.

Defendants next allege that Wurm sent Defendants an ostensibly inappropriate and threatening email, relating to Plaintiffs' attempt to settle their FDCPA claims. MFS at pp. 6-7. Plaintiffs' attempt to settle their instant claims are not problematic. Defendants' first argue that Siegert is not a debt collector and thus was not liable. MFS at p. 7. Defendants also state that "Wurm clearly did not research 'this specific issue.'" MFS at p. 7. But Plaintiffs had in fact researched this issue extensively, locating *Chapman*, *supra*, which provides for vicarious liability's application to FDCPA claims against the creditor. 2015 WL 5785952, at *3; *see also Racek v. Gurstel Chargo, P.A.*, No. CIV. 12-380 DWF/SER, 2013 WL 4838900, at *5 (D. Minn. Sept. 11, 2013) (denying creditors motion for summary judgment due to outstanding factual and legal issues as to whether the creditor's control over the debtor collector is necessary to ascribe liability to the creditor for FDCPA violations and whether if this rule applies, uncontroverted evidence of the requisite control). Defendants cite to no cases in opposition and fail to address that Plaintiffs' Petition pleaded the requisite control (to the extent necessary). (Doc 1 at (*passim*)).

Defendants further state that because the FDCPA violation arouse out of the state-court action, it should have been brought in the same court and thus, the above-described settlement attempt, in which Plaintiffs' counsel stated that Plaintiffs planned to bring a federal statutory action in federal court, was somehow unethical or improper. MFS at p. 7. Again, Siegert, not Plaintiffs, filed the motion to sever in the state case, refused to settle the instant case, and drove up costs. Finally, the sum that Plaintiffs sought in exchange for settlement of their FDCPA claims is irrelevant—and Defendants' even admit that Plaintiffs could prove actual damages beyond the $1,000 cap. MFS at p. 7. Moreover, these arguments have no bearing on Rule 11(b)(1)'s

Page **6** of **13**

prohibition on misrepresentations to the Court (or the Rule's other prohibitions on the misuse of litigation for that matter) and epitomize that the instant motion for sanctions, given the pending Motion to Dismiss, should have been addressed through that Motion to Dismiss (given Defendants' justifiable concern with judicial economy).

Defendants also allege that that Plaintiffs should be precluded from asserting their FDCPA claim because Plaintiffs sought a temporary restraining order in the state court action to stop any further debt collections letters from Siegert. MFS at p. 7. Defendants identify no applicable law and fail to identify the requisite elements, such as a final judgment, necessary for preclusion to attach. *See Simmons v. O'Brien,* 77 F.3d 1093, 1096 (8th Cir. 1996) (describing Missouri's preclusion elements, including, "prior adjudication resulted in a judgment on the merits.").

Moreover, the TRO's statement that Siegert has no present intent to send any further letters outside the litigation (pursuant to a denied TRO), has no bearing on Defendants' liability for doing so previously and moreover, the TRO's statement evidences that the first two letters were violative of the FDCPA. Relatedly, Defendants make a weak preclusion argument relating to a motion to amend, which "[t]he state court, however, declined to hear. . . ." MFS at p. 7-8, 10-11. Defendants' self-defeating argument (given that the state court did not take up the motion to amend) is further undermined by the fact that Plaintiffs have since filed a new Motion to Amend, with a newly proposed Amended Petition.

Finally, Defendants claim that Wurm should be sanctioned "to deter the future filing of lawsuits against law firms that take adversarial positions in defense of their clients." MFS at p. 8. As an initial matter, the instant lawsuit has nothing to do with Jenkins & Kling's defense of their client—it relates to Defendants' attempt to collect a debt that did not exist, in an effort to harass and intimidate Plaintiffs (evidenced by the debt's non-existence). Defendants clarify that they

believe they have not violated the FDCPA because: (1) the "two letters Jenkins & Kling sent were required to be sent;" (2) the "letters were addressed to Wurm not Plaintiffs;" and (3) "the Complaint fails to even address the substance of the letters and how such letters specifically violated § 1692d." MFS at p. 8; *see also* MFS at p. 10-11.

Their first argument fails because it does not address Defendants' initial letter. Moreover, Defendants' second letter, if anything, provided Defendants the opportunity to rectify their erroneous first letter, by stating there is no debt. Instead, Defendants asserted the debt's legitimacy. The FDCPA does not require a party to confirm a debt if the debt does not really exist.

> That § 1692g requires a debt collector to verify a debt upon a consumer's request does not compel the conclusion that a debt collector is allowed to send collection letters carelessly or arbitrarily in the first instance with no basis to believe that the debts sought to be collected are bona fide debts. Indeed, an initial misrepresentation can be harmful.

*Eide v. Colltech, Inc.*, 987 F. Supp. 2d 951, 963 (D. Minn. 2013).

Defendants' second argument is simply untrue—both letters were addressed to Plaintiffs:

July 17, 2023

**Via Certified Mail, Return Receipt Requested
and First Class U.S. Mail**

Drs. Whitney Ross and Ian Ross
c/o: William R. Wurm, Esq., Amundsen Davis
120 South Central Avenue, Suite 700
St. Louis, Missouri 63105

RE:   **DEMAND FOR PAYMENT**
      **AMOUNT NOW DUE: $1,777.50**

August 25, 2023

**Via Certified Mail, Return Receipt Requested
and First Class U.S. Mail, and Email**
Drs. Whitney Ross and Ian Ross
c/o: William R. Wurm, Esq., Amundsen Davis
120 South Central Avenue, Suite 700
St. Louis, Missouri 63105

RE:   **VERIFICATION OF DEBT**
      *Case No. 2322-CC00955*

Moreover, Defendants accuse Plaintiffs of lacking a legally tenable position, but cite to no law relating to sending debt collection letters to a purported debtor's counsel. Unsurprisingly, case law addressing this issue is complex and diverse and evidences that Defendants' actions are violative of the FDCPA. *See, e.g., Hemmingsen v. Messerli &* Kramer, *P.A.*, 674 F.3d 814, 818 (8th Cir. 2012) ("[T]he circuit courts have struggled to define the extent to which a debt collection lawyer's representations to the consumer's attorney or in court filings during the course of debt collection litigation can violate §§ 1692d–f."), *see also Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015) ("Consistent with our decision in *Hemmingsen,* we decline to adopt an inflexible rule that the FDCPA can never apply to discovery requests made directly to the consumer's attorney during the course of debt collection litigation.").

*Hemmingsen* and *Powers* are dispositive as Plaintiffs' claims' propriety. *See* 674 F.3d at 818, *and* 776 F.3d at 574; *see also Sayyed v. Wolpoff,* 485 F.3d 226, 232-33 (4th Cir. 2007) (holding that a communication with an attorney representing a debtor can violate the FDCPA; such a communication "qualifies as an indirect communication to the debtor"), *and Coyne v. Midland Funding LLC*, 895 F.3d 1035, 1037 (8th Cir. 2018) (discussing applicable standard to FDCPA communications sent to alleged debtor's attorney). These cases undercut Defendants' claims that Plaintiffs lack a legally tenable position and that Plaintiffs/Wurm failed to properly research the issue.

Further, Plaintiffs' Complaint alleges a claim under 15 U.S.C. § 1692(d), which prohibits conduct, "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Here, Defendants attempted, via both letters, to collect a debt, which Defendants knew did not exist—comprising the requisite harassment, oppression, and abuse.

### D. **Plaintiffs have pled concrete injuries in fact and have standing.**[1]

Defendants assert that Plaintiffs have not sufficiently pled concrete injuries as required to establish standing resulting from Defendants' wrongdoing. "To establish standing, Plaintiff must show: (i) that she 'suffered an injury in fact that is concrete, particularized, and actual or imminent;' (ii) that the injury likely was caused by Defendant; and (iii) that judicial relief likely would redress the injury." *Ebaugh v. Medicredit, Inc*., No. 4:23-CV-209-MTS, 2023 WL 5289226, at *1 (E.D. Mo. Aug. 17, 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In *Ebaugh*, this Court dismissed (with leave to amend) a complaint under the FDCPA where the only harm alleged was that the plaintiff was alarmed, confused and emotionally distressed (loss of sleep, worry). *Id*. at *2. Plaintiffs fix *Ebaugh*'s pleading deficiencies with the requisite concrete injuries in the Complaint's paragraph 34: "Defendants' actions were intended solely to cause Ross distress and suffering and Defendants have succeeded, resulting in the Ross' suffering from loss of sleep, nausea, and other physical and emotional manifestations of this distress." Compl. at ¶ 43 (emphasis added).

Defendants also state that there is no factual or evidentiary support that Defendant Jenkins & Kling is responsible for causing Plaintiffs' Harm. MFS at p. 8. Plaintiffs' Complaint states: "Given that Jenkins & Kling represents Siegert in the Underlying Matter, it is thus undoubtedly aware that **no debt could exist** pursuant to the Contract's prevailing party provision, making Defendants' conduct all the more egregious." Compl. at ¶ 31. Plaintiffs also state: "Defendants' actions were intended solely to cause Ross distress and suffering and Defendants have succeeded, resulting in the Ross' suffering from loss of sleep, nausea, and other physical and emotional

---

[1] Notably, the following argument parallels, nearly identically, Plaintiffs' response to Defendants' Motion to Dismiss, which parallels Defendants' Motion for Sanctions. Defendants' parallel and unnecessary pleading, considering Defendants' argument about increased costs and fees, further evidences that Plaintiffs are truly in the right here.

manifestations of this distress." Compl. at ¶ 43. Plaintiffs thus demonstrate that Defendants directly caused the complained harm and injuries by sending debt collection letters to Plaintiffs, when Defendants knew that no debt existed.

Defendants argue in addition, that Plaintiffs have made no allegations that Defendants intend to take action that could harm Plaintiffs' credit, and yet, the first letter states, "[u]nless payment in full is received by Ms. Siegert by August 21, 2023 . . . Ms. Siegert will proceed to enforce her rights and remedies as permitted under law or in equity." (Doc. 1-6 at p. 1). Defendants' second letter also states that it does "not constitute a waive of any rights or remedies." (Doc. 1-7 at p. 2). Finally, the Complaint evidences Plaintiffs efforts to obtain the requisite commitments from Defendants, which Defendants refused to provide, over multiple months. Compl. (*passim*). Plaintiffs' individualized harm and mental anguish (accompanied by physical manifestations thereof) is well-pleaded and more than sufficiently detailed and specific.

Defendants also allege a lack of standing on the basis that this matter should be brought in the pending state court matter. MTS at p. 10. Defendants cite to no authority whatsoever. MTS at p. 10. Defendants also commit a fallacy by ignoring that even if a state court *may* have the right to hear a cause of action, such state court is not thus necessarily the only court in which relief may be properly sought.

Defendants claim that Plaintiffs failed to allege that Defendants engaged in any harassing conduct. MTD. at p. 11-12. Plaintiffs allege the absence of a debt and thus, the letters at issue demanding payment of such debt inherently comprise an attempt to harass. Compl. (passim).

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order denying Defendants' Motion to Dismiss, awarding Plaintiffs their incurred attorneys' fees and costs in responding thereto, and for whatever further relief the Court deems necessary and just.

Dated: December 11, 2023            RESPECTFULLY SUBMITTED,

**WURM, L.C.**

*/s/ William R. Wurm*
William R. Wurm, #68912(MO)
9223 Citadel Court
St. Louis, MO 63123
Telephone: (636) 439-9858
william@wurmlc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically filed and served to counsel via the Court's e-filing system on this 11th day of December, 2023, addressed to the following attorney(s) of record:

Liam R. Brannon
JENKINS & KLING, P.C.
150 North Meramec Avenue
Suite 400
St. Louis, MO 63195
Email: lbrannon@jenkinskling.com

                */s/ William R. Wurm*