UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DR. WHITNEY ROSS, *et al.*,   ) | |
| ) | |
| Plaintiffs,   ) | |
| ) | |
| vs.   ) | Case No. 4:23-cv-01295-MTS |
| ) | |
| RACHEL SIEGERT, *et al.*,   ) | |
| ) | |
| Defendants.   ) | |

## MEMORANDUM AND ORDER

Plaintiffs Whitney and Ian Ross and Defendant Rachel Siegert are litigating an underlying action in the Missouri Circuit Court for the City of St. Louis. Their dispute has spilled over into this action arising under the Fair Debt Collection Practices Act ("FDCPA"). Currently before the Court is Defendants' Motion to Dismiss this action under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). With the proper standards in mind, the Court has considered the parties' arguments. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (discussing motion to dismiss for lack of subject matter jurisdiction standard in facial attack); *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010) (discussing motion to dismiss for failure to state a claim standard). For the reasons explained herein, the Court will grant Defendants' Motion and dismiss this action for failure to state a claim upon which relief can be granted.

\* \* \*

On behalf of its client Defendant Rachel Siegert, Defendant Jenkins & Kling, P.C. ("Jenkins & Kling") sent a letter demanding payment to Plaintiffs Whitney and Ian Ross

through the Rosses attorney, William Wurm. In response, Wurm, on behalf of his clients, disputed the validity of the debt and requested that Defendants verify the debt. Defendant Jenkins & Kling responded to Wurm via a second letter that explained that the Rosses owed Siegert $1,777.50 for her attorneys' fees and costs in the underlying action in Missouri Circuit Court. Plaintiffs then filed the instant action, asserting a single count under the FDCPA. Specifically, Plaintiffs allege Defendants violated 15 U.S.C. § 1692d[1] "in that they harassed, oppressed and abused" Plaintiffs through the letters to Plaintiffs' attorney "in connection with the collection of a purported debt, which obviously does not exist in any form." Doc. [1] ¶ 42. Plaintiffs allege they suffered "loss of sleep, nausea, and other physical and emotional manifestations of th[eir] distress." *Id.* ¶ 43. Defendants moved to dismiss. *See* Fed. R. Civ. P. 12(b)(1), (6).

Defendants first argue that Plaintiffs lack standing here because they have not alleged that they "suffered a concrete injury in fact." Doc. [11] at 5. The Court disagrees. Plaintiffs have alleged injuries under the FDCPA that have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Plaintiffs allege that the letters they received violated the FDCPA because Defendants' letters were harassing, oppressive, and abusive, which caused them loss of sleep, nausea, and other physical and emotional manifestations of their distress. Doc. [1] ¶¶ 42, 43.

---

[1] Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

The common law has recognized the harms from "outrageous conduct causing severe emotional distress." *See* Restatement (Second) of Torts § 46 (1965); *see also Warrem v. Parrish*, 436 S.W.2d 670, 673 (Mo. 1969). What is more, it has done so relative to the conduct of debt collectors specifically. *See* Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033, 1063 (1936) ("That debtors ought to be protected from being bedeviled and harassed by offensive, high-pressure, extra-legal methods of collection is a sentiment definitely crystallizing in the cases."); *see also, e.g.*, *Warrem*, 436 S.W.2d at 673; *Bowden v. Spiegel, Inc.*, 216 P.2d 571, 572 (Cal. Dist. Ct. App. 1950). Therefore, the harm posed by harassing, abusive, and oppressive acts by creditors is analogous to the type of emotional harm that has been recognized at common law.

"While Congress cannot transform a non-injury into an injury on its say-so, that is hardly what it did here." *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.). "[T]he number of causes of action in which a person may recover for emotional harm . . . supports the notion that emotional harm satisfies the 'injury in fact' requirement of constitutional standing." *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 168–69 (5th Cir. 2016). Harassing, oppressive, and abusive behavior "create the same risks of mental distress traditionally recognized" in these common law claims. *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 693 (8th Cir. 2017) (finding false representation in court pleadings of the amount of an individual's debt and the false threat to proceed to trial "create the same risks of mental distress traditionally recognized in unjustifiable-litigation torts and that Congress judged sufficient for standing to sue").

- 3 -

Thus, these injuries under § 1692d "easily satisfy" the concreteness requirement. *See Ehrich v. Credit Prot. Ass'n, L.P.*, 891 F. Supp. 2d 414, 417 (E.D.N.Y. 2012); *see also Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) (finding plaintiffs had standing where they "complained of 'fear, anxiety, and emotional distress' after receiving 'intimidating' and 'misleading' dunning letters"). The Court concludes that Plaintiffs' allegations regarding their harm sufficiently establish their standing at this stage.

Defendants' position rests on analysis of Plaintiffs' supposed lack of standing that views this case through the lens of § 1692c. *See, e.g.*, Doc. [11] at 6–7. The Court agrees that "Congress didn't elevate the receipt of a single, unwanted message to the status of a legally cognizable injury in the FDCPA." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022) (emphasis omitted). Thus, this Court has concluded that the harm posed from a single, unwanted letter delivered to a mailbox did not bear a close relationship to the harm recognized in the tort of intrusion upon seclusion and, therefore, concluded that the plaintiff pleaded only a mere technical violation of § 1692c, not a concrete injury. *See Ebaugh v. Medicredit, Inc.*, 4:23-cv-0209-MTS, 2023 WL 5289226, at *1 (E.D. Mo. Aug. 17, 2023), *appeal docketed*, No. 24-1838 (8th Cir.); *accord Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 641 (7th Cir. 2023) ("While receiving a letter can be an irritation, we do not see an actionable analogy between a letter delivered to a mailbox and automated text messages delivered to one's cell phone.").

Here, though, Plaintiffs' theory of the case is not that the letters violated the FDCPA because they merely were unwanted and intrusive; Plaintiffs did not bring suit under 15 U.S.C. § 1692c.[2]  Rather, Plaintiffs' theory is that the letters Defendants sent violated the FDCPA because they were harassing, oppressive, and abusive, which caused Plaintiffs harm—harm that is quite analogous to that caused by intentional infliction of emotional distress.  Doc. [1] ¶ 42, 43.  "Whether that is a valid theory under the statute, and these facts, is a merits question."  *See Ward v. NPAS, Inc.*, 63 F.4th 576, 582 (6th Cir. 2023); *accord Warth v. Seldin*, 422 U.S. 490, 500 (1975) (explaining that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal").  Though Plaintiffs' "claim might fail on the merits," that "does not deprive [them] of *standing* to assert it."  *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021); *accord City of Waukesha v. Env't Prot. Agency*, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam) ("[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.").  Plaintiffs have sufficiently alleged their standing to bring this action.

Since the Court concludes Plaintiffs have standing, the Court turns to the merits and finds that Plaintiffs' § 1692d claim plainly fails.  Section 1692d prohibits a debt

---

[2] For this reason, whether Plaintiffs would have had standing to bring an FDCPA claim under § 1692c does not control the analysis here.  *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022) (explaining that a plaintiff cannot "bootstrap the harms [the FDCPA] recognizes as actionable" in one section "to demonstrate standing to sue based on a different provision" of the FDCPA); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press.").

collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.  The Complaint maintains that Defendants harassed, oppressed, and abused Plaintiffs by sending letters regarding a debt to Plaintiffs' attorney.  But Plaintiffs attached copies of the letters, *see* Doc. [1-6] & Doc. [1-7], and they are as mundane and unremarkable as letters between attorneys representing adversarial parties can be.  So, how are these run-of-the-mill letters harassing?  In opposition to Defendants' Motion to Dismiss, Plaintiffs devote a mere two sentences to explain.  *See* Doc. [26] at 4.  Plaintiffs say that since they do not owe Defendants any debt, "the letters at issue demanding payment of such debt inherently comprise an attempt to harass."  Doc. [26] at 4.  For this proposition, Plaintiffs failed to cite a single case.[3]

To understand what § 1692d means by "harass, oppress, or abuse," it is helpful to review the conduct the statute provides as examples of a violation of the section.  It describes the "use or threat of use of violence or other criminal means to harm the physical person," the "use of obscene or profane language," or "language the natural consequence of which is to abuse the hearer or reader," and "[c]ausing a telephone to ring

---

[3] Plaintiffs' nominal opposition to this part of Defendants' Motion to Dismiss not only failed to cite any caselaw, it also failed to provide any meaningful analysis.  Moreover, this dearth of analysis came only after the Court required them to show cause for failing to file any opposition whatsoever to Defendants' Motion.  If Plaintiffs believed in the merits of their case—that Defendants harassed them in violation of the FDCPA—they would have timely filed an opposition to Defendants' Motion to Dismiss and put at least a bit of thought into it.  Their lack of interest in prosecuting this case, or their inability to find law in support of it, coupled with the parties' history with one another, indicates to the Court that something else may well have motivated the filing of this action.  At the same time, though, the Court remains perplexed why Defendants even sent Plaintiffs' attorney the first letter.  It seems other motivations may have been at play there, too.  The Court will deny Defendants' Motion for Sanctions.

or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." § 1692d(1), (2), (5). Defendants' conduct is not the least bit like any of the examples the section provides.[4] To be sure, § 1692d makes clear that the examples it lists do not limit "the general application" of the prohibition. But given that Defendants' alleged conduct is so unlike any of the six examples, it truly is puzzling why Plaintiffs concluded that their position was so obviously correct that they need not have supplied any caselaw to support it.

Further suggesting that the alleged conduct at issue here does not violate § 1692d is the fact that other provisions of the FDCPA covers they very type of ill Plaintiffs allege. Plaintiffs allege that the debt Defendants wrote about in their letters "obviously does not exist in any form." Doc. [1] ¶ 42.[5] Section 1692e(2) prohibits the "false representation" of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). Many district courts have held that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of 1692e." *See, e.g.*, *Stuart v. AR Res., Inc.*, 2:10-cv-03520-RB, 2011 WL 904167, at *4 (E.D. Pa. Mar. 16, 2011); *see also Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (collecting cases). And the U.S. Court of Appeals

---

[4] The other examples include the "publication of a list of consumers who allegedly refuse to pay debts," the "advertisement for sale of any debt to coerce payment of the debt," and the "placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d.

[5] Plaintiffs' Complaint's assertion that the debt "obviously does not exist in any form," *see* Doc. [1] ¶ 42, is a legal conclusion that is not entitled to the assumption of truth. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (noting courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts").

for the Eighth Circuit has held that "an attempt to collect a debt not owed is a material violation of § 1692f(1)." *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 699 (8th Cir. 2017); *see also* 15 U.S.C. § 1692f (prohibiting debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt").

Plaintiffs, the masters of their Complaint, chose not to seek redress under § 1692e or § 1692f. *See Winfrey v. City of Forrest City*, 882 F.3d 757, 758 (8th Cir. 2018). Instead, they sought to shoehorn their allegations into a provision of the FDCPA that Defendants quite clearly did not violate. Harassing or abusive and false or misleading are not perfectly interchangeable. *See McGinnis v. Dodeka, LLC*, 4:09-cv-0334-DDB, 2010 WL 1856450, at *4 (E.D. Tex. May 7, 2010) ("While Plaintiff's allegations may constitute misleading statements and while they may have been unfair, the Court finds that they do not rise to the level of abuse or harassment contemplated by the statute."). They are two of the three separate "broad prohibitions" at the "substantive heart of the FDCPA." *See Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

Besides their position that the debt does not exist, Plaintiffs point to nothing at all to show these unoffending letters were harassing, abusive, or oppressive. Indeed, even taking the alleged facts in the Plaintiffs' best light, Defendants communicated with Plaintiffs about this debt in about the least harassing way they could have done so. *First*, they never communicated with Plaintiffs directly. Rather, they sent the letters through Plaintiffs' attorney. Plaintiffs' attorney, as the "intermediary between" Plaintiffs and Defendants, always was in a position to "protect" Plaintiffs from any "fraudulent or

harassing behavior." *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)).[6]

*Second*, they communicated only via letter, which is "among the least intrusive means of communicating with a debtor," *see Pollard v. L. Off. of Mandy L. Spaulding*, 967 F. Supp. 2d 470, 475 (D. Mass. 2013), *aff'd*, 766 F.3d 98 (1st Cir. 2014), and the easiest for a debtor to ignore, *cf. Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 72 (1983) (noting recipients of "objectionable mailings" may avoid them "simply by averting their eyes" or taking the short journey "from mail box to trash can"). *See Pucillo*, 66 F.4th at 640 ("[T]here is nothing inherently bothersome, intrusive, or invasive about a collection letter delivered via U.S. Mail."). In sum, Plaintiffs have not explained how it was harassing, abusive, or oppressive to them, when their attorney received the two anodyne letters at issue here.

\* \* \*

While the Court concludes Plaintiffs have standing to bring this action, the Court agrees with Defendants' conclusion that Plaintiffs' claim fails on the merits. For the reasons discussed in footnote three, and because Plaintiffs have made no real effort to defend their legal theory or seek to revise it, the Court determines that it is appropriate to dismiss this action without providing Plaintiffs leave to file an amended complaint.

Accordingly,

---

[6] Plaintiffs never allege how they saw the letter, which Defendant Jenkins & Kling sent to Plaintiffs' attorney, not to Plaintiffs. The Court will make the inference in their favor that Plaintiffs' attorney showed Plaintiffs the "threatening" letter—even though Plaintiffs were "already struggling to bear" their "emotional . . . distress," Doc. [1] ¶¶ 23, 24.


**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [10], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions, Doc. [17], is **DENIED**.

The Court will enter a separate Order of Dismissal herewith dismissing this action with prejudice.

Dated this 31st day of May 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE